**Karen ALLISON, suing individually and on behalf of all others similarly situated, Plaintiff,**

v.

**LIBERTY SAVINGS, Defendant.**

No. 80 C 5789.

United States District Court, N. D. Illinois, E. D.

Feb. 5, 1982.

Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Chicago, Ill., for plaintiff.

Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff, Karen Allison ("Allison"), brought this lawsuit as a class action against defendant, Liberty Savings ("Liberty"), alleging violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 et seq., and the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat.1979, ch. 121½, § 261 et seq. The complaint charges that Liberty violated § 10 of RESPA, 12 U.S.C. § 2609, and the Illinois statute when, in connection with the issuance of federally related mortgage loans, it required her and other mortgagors to deposit in tax escrow accounts sums in excess of the limits prescribed by federal law. Allison claims that Liberty illegally overcharged her the amount of $291.65 and estimates that Liberty has accumulated several million dollars in overcharges of other mortgagors. She seeks a return of the excess tax escrow deposit on behalf of each purported class member, an accounting by Liberty to the class for its alleged unjust enrichment resulting from its use of the illegally obtained excess funds, and an award of attorneys' fees and costs.

■ Liberty has moved to dismiss the complaint, contending that the court lacks subject matter jurisdiction of the RESPA claim because there is no private right of action for violations of § 10 of RESPA[1] and, even assuming a private right of action, there is no grant of federal jurisdiction over such actions. With respect to the state law count, Liberty contends that absent an independent basis of federal jurisdiction, this court lacks pendent subject matter jurisdiction over state law claims. Liberty argues alternatively that this count fails to state a cause of action.

Shortly after the briefing of Liberty's motion was completed, Allison, through her attorneys, notified the Chicago office of the Federal Home Loan Bank Board ("Bank Board") of Liberty's alleged violations of RESPA's tax escrow restrictions. The Bank Board investigated her claims and determined that the approach used by Liberty in calculating Allison's tax escrow account did not comply with RESPA. It instructed Liberty to return the resulting excess amounts to Allison and every other residential mortgagor whose tax escrow account had improperly been calculated. The Bank Board also informed Liberty that it would review the escrow accounts in question to ensure compliance.

The court ordered supplemental briefing of Liberty's motion to dismiss in light of these developments. In its supplemental memoranda, Liberty argues that the Bank Board's investigation and handling of Allison's claims supports its argument that § 10 of RESPA provides no private right of action and renders Allison's complaint essentially moot. Allison responds that the administrative enforcement of RESPA through the Bank Board does not negate the existence of a private right of action and that the Bank Board's action in ordering the return of the amounts by which Liberty overcharged Allison[2] and other mortgagors does not moot her claims for attorneys' fees and damages resulting from the loss of the use of her money.

■ Although the question is a close one,[3] the court concludes that there is no

---

1. The existence of an implied private right of action under a particular statute is not a question of subject matter jurisdiction. Rather it is a question of whether plaintiff has stated a cause of action. *Burks v. Lasker*, 441 U.S. 471, 476, n.5, 99 S.Ct. 1831, 1836, n.5, 60 L.Ed.2d 404 (1979), cited in *City of Evansville, Ind. v. Ky. Liquid Recycling*, 604 F.2d 1008, 1011, n.4 (7th Cir. 1979).

2. Allison concedes that Liberty reimbursed her in the amount which the Bank Board ordered but challenges the sufficiency of this amount. In her complaint she seeks reimbursement in the amount of $291.65; the Bank Board concluded that Liberty overcharged her $238.70.

3. There appears to be only one case that has dealt with the issue of a private right of action under § 10 of RESPA. In *Vega v. First Federal Savings and Loan Association of Detroit*, 622

implied private right of action under § 10 of RESPA. This decision dispenses with the entire lawsuit, since there is no independent basis of federal jurisdiction which would support the exercise of pendent jurisdiction over Allison's state law claim. *See Smith v. No. 2. Galesburg Crown Finance Corp.,* 615 F.2d 407, 422 (7th Cir. 1980).

Allison appears to, and indeed must, concede that RESPA contains no express grant of a private right of action for violations of its tax escrow provisions. There is no mention in § 10 or any other section of RESPA of a right of action on the part of private parties to enforce the requirements of § 10 or to seek damages for their violation. Allison must thus rely on the theory of an implied private right of action in order to state a claim.

In recent years, the Supreme Court has adopted an increasingly restrictive standard for implying a private cause of action under federal statutes that do not expressly provide for one. Its early view that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" behind a statute, *J. I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964), has evolved into the position that "[t]he ultimate question is one of congressional intent, not one of whether this court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1978). *See City of Evansville, Ind. v. Ky. Liquid Recycling,* 604 F.2d at 1011. As the Court of Appeals for the Fifth Circuit has noted:

> Only a cave dweller . . . would not realize that there has been a remarkable change of attitude by the Supreme Court regarding the inference of private rights of action in the last fifteen years.

*Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1088 (5th Cir. 1980).

The existence of a federal cause of action is thus a question of statutory construction. The Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), listed four factors to consider in determining whether there is an implied private right of action: (1) is plaintiff a member of the class for whose especial benefit the statute was enacted? (2) is there an indication in the history or language of the statute of legislative intent to create a private cause of action? (3) is implication of such a remedy consistent with the purposes and scheme of the statute? (4) is the cause of action one traditionally relegated to state law? Upon examining the statute in question in light of the *Cort v. Ash* mandate, this court concludes that while the first factor favors implication of a private right of action, the latter three tip the balance against concluding that Congress intended to give private persons a right of action for damages for violations of § 10 of RESPA.

It is clear from the language of § 10 that it was intended to benefit primarily, if not solely, persons such as Allison who borrow funds under federally-related mortgage loans. It states that "[a] lender [such as Liberty], in connection with a federally related mortgage loan, may not require the borrower" (such as Allison) to deposit in a tax escrow account funds in excess of an amount determined according to a prescribed formula. It places an obligation upon lenders that runs directly in favor of borrowers. The statement of congressional findings and purpose makes it even more clear that borrowers were the intended beneficiaries of § 10:

> It is the purpose of this chapter to effect certain changes in the settlement process for residential real estate that will result—
>
> \* \* \* \* \* \*
>
> (3) in a reduction in the amounts home buyers are required to place in escrow

F.2d 918, 925 n.8 (6th Cir. 1980), the court concluded, without any discussion of the relevant factors, that a private right of action under § 10 was intended by Congress. The question does not appear to have been raised, briefed or argued by the parties in that case, and this court does not consider the Sixth Circuit's cursory mention of the issue controlling.

accounts established to insure the payment of real estate taxes and insurance
. . . .

12 U.S.C. § 2601.

■ While the language of the statute does not expressly grant borrowers the right to enforce the lender's obligation through judicial proceedings, it is unlike legislation that, for example, benefits the public at large, *see Cort v. Ash, supra,* (general criminal statute enacted to prevent undue influence by corporations over federal elections) or only indirectly benefits a particular class of individuals, *see United States, Etc. v. Capeletti Bros., Inc.,* 621 F.2d 1309, 1313–14 (5th Cir. 1980) (statute imposing duties on federal agency regarding contents of government contracts). Were this the only factor to consider, the court might well conclude that Allison, as a beneficiary of the statute, has a private right of action for its enforcement. However, "the mere fact that the statute was designed to protect [a class of individuals] does not require the implication of a private cause of action on their behalf." *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979). Examination of the statute in light of the other *Cort* factors persuades the court that Congress did not intend the private enforcement of § 10.

The parties have not submitted and the court has not found any legislative history of RESPA that evinces a congressional intent to either grant or deny a private right of action under § 10. While the absence of any legislative discussion on the question of private rights of action does not automatically require the conclusion that one does not exist, *see Transamerica Mortgage Advisor v. Lewis,* 444 U.S. at 18, 100 S.Ct. at 246, *Cannon v. University of Chicago,* 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979), "implying a private right of action on the basis of congressional silence is a hazardous enterprise at best." *Touche Ross & Co. v. Redington,* 422 U.S. at 571, 99 S.Ct. at 2486.

Here, the language of the statute itself tends to refute any implication of a private right of action under § 10. Congress expressly provided for private remedies in several sections of RESPA. Under § 8, 11 U.S.C. § 2607, which prohibits kickbacks and unearned fees, violators are made liable in treble damages and attorneys' fees to persons charged for excessive real estate settlement services. Under § 9, 12 U.S.C. § 2608, which prohibits sellers of real estate from requiring buyers to purchase title insurance from a particular company, violators are made liable to buyers in treble damages. Section 16 of RESPA, 12 U.S.C. § 2614, sets forth the jurisdictional provisions for private actions pursuant to §§ 8 and 9. "Obviously, then, when Congress wished to provide a private damages remedy, [for violations of RESPA], it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington,* 442 U.S. at 572, 99 S.Ct. at 2487. "It is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. at 20, 100 S.Ct. at 247, quoting *Cannon v. University of Chicago,* 441 U.S. at 742, 99 S.Ct. at 1981 (Powell, J., dissenting). The second *Cort* factor thus weighs heavily against implying a private right of action under § 10 of RESPA.

Consideration of the third factor established in *Cort v. Ash* —consistency of an implied private right of action with the legislative scheme of enforcement—also favors Liberty's position. Section 19 of RESPA vests in the Secretary of Housing and Urban Development ("HUD") the authority "to prescribe such rules and regulations [and] to make such interpretations . . . as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617. This evidences an intent to entrust enforcement of the statute to HUD.

Moreover, RESPA applies only to real estate settlements involving a federally-related mortgage loan. That term is defined to include loans made by lenders who are regulated by agencies of the federal government or whose deposits are insured by such agencies, loans made or assisted by a federal agency in connection with a hous-

ing or urban development program, and loans intended to be sold by the originating lender to a federal agency. 12 U.S.C. § 2602. In this case, Allison's claim is premised on the fact that Liberty is a lender whose deposits are insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"). Congressional enactments relating to banks and other financial institutions provide for extensive regulation and oversight of such institutions by federal agencies. Here, Liberty, as a lender whose deposits are insured by FSLIC, is subject to extensive supervision and regulation by that entity. Under 12 U.S.C. § 1730(e)(1), it may enter cease-and-desist orders when an insured institution has violated a "law, rule, or regulation," and may require the institution "to take affirmative action to correct the conditions resulting from any such violation or practice."[4] Under this statute, FSLIC is empowered to order Liberty to cease violating § 10 of RESPA and to reimburse overcharged customers. *Cf. Till v. Unifirst Federal S & L Ass'n.*, 653 F.2d 152, 160 (5th Cir. 1981).

The developments in this case bear out the conclusion that a number of federal agencies have the power to, and do, enforce § 10 of RESPA. Liberty submitted the affidavit[5] of a Bank Board examiner which states that the Bank Board examines savings and loan associations insured by FSLIC for compliance with RESPA and that FSLIC uses, where appropriate, its powers to bring about compliance. Allison, in fact, complained to the Bank Board about Liberty's practices, and she concedes that she was reimbursed substantially in the amount of the overcharge that she claims.[6]

The fourth *Cort* factor—whether the cause of action is one traditionally relegated to state law—need be considered only if analysis of the first three factors leaves a question as to whether Congress intended to create a private cause of action. The court is persuaded that there is no implied private right of action under § 10 of RESPA based upon the absence of any indication in the legislative history of RESPA that Congress intended to create a private remedy, the language of the statute itself, and the broad legislative scheme for federal administrative enforcement of laws relating to banks and financial institutions. The fourth factor, in any event, favors neither party over the other. On the one hand, questions relating to real estate taxation and lending practices are traditionally concerns of the state. On the other hand, lending institutions have largely become creatures of the federal government by virtue of extensive statutory regulation described, in part, above.

---

4. The Federal Home Loan Bank Board has similar regulatory power over federal savings and loan associations. 12 U.S.C. § 1464(d)(2)(A). State banks which are insured by the Federal Deposit Insurance Corporation are subject to the same broad supervision of the "appropriate Federal banking agency." 12 U.S.C. § 1818(b)(1).

5. Allison has challenged Liberty's submission of this affidavit as improper. The federal rules, however, make it clear that evidence outside the pleadings may be submitted on motion to dismiss for failure to state a claim. Fed.R. Civ.P. 12(b). In any event, Allison concedes in her supplemental memorandum in opposition to Liberty's motion that she informed the Bank Board of Liberty's alleged violations and that the Bank Board directed Liberty to make refunds to its customers.

6. Allison complains that the administrative action taken by the Bank Board should not be considered in determining whether § 10 con-

fers a private right of action upon borrowers because she has not obtained all of the relief she seeks in her lawsuit. In the first place, whether the scope of administrative action taken satisfies all of the demands of a private plaintiff is really irrelevant to the issue of the existence of a private right of action. Secondly, this court considers the evidence of the actual administrative action taken only as supportive of the statutory authority for administrative enforcement. Finally, the additional relief which Allison seeks—an award of attorneys' fees and an accounting for unjust enrichment—are rather extraordinary equitable remedies which, at least in the case of attorneys' fees, are unavailable in the absence of express statutory authorization. *See Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The type of additional relief that Allison seeks only weakens her claim of a private right of action.

On the basis of the foregoing analysis, the court concludes that there is no implied private right of action under § 10 of RES-PA. Allison's complaint is therefore dismissed.