Karen ALLISON, suing individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

LIBERTY SAVINGS, Defendant-Appellee.

No. 82–1376.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1982.

Decided Dec. 27, 1982.*

* This opinion has been circulated among all judges of this court according to Circuit Rule 16(e) since this opinion creates a conflict with the Sixth Circuit's position in *Vega v. First Federal Savings and Loan Association,* 622 F.2d 918 (6th Cir.1980). A majority did not favor a rehearing en banc on this issue. Judges Cudahy and Posner voted to rehear this matter en banc.

Sherwin D. Abrams, Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Chicago, Ill., for plaintiff-appellant.

Thomas B. Cassidy, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for defendant-appellee.

Before ESCHBACH, Circuit Judge, SWYGERT, Senior Circuit Judge, and DUMBAULD,** Senior District Judge.

ESCHBACH, Circuit Judge.

This action was brought under § 10 of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2609 (1976), and included a pendent state claim under § 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev. Stat. ch. 121½, § 262 (1981). The district court, 535 F.Supp. 828, dismissed the complaint, concluding that there is no implied private right of action under § 10 of RESPA. For the reasons below, we affirm.

I

On October 16, 1980, the appellant, Karen Allison, purchased a home in Chicago, financed in part by a loan from Liberty Savings ("Liberty"), the appellee. At the closing, Liberty required Allison to deposit in a tax escrow account an amount which was approximately $250.00 more than allowed under § 10 of RESPA.

On October 29, 1980, Allison brought this action individually and on behalf of other similarly situated borrowers from Liberty forced to make excessive tax escrow deposits. The complaint was dismissed prior to class certification. Count one of her complaint was based on § 10 of RESPA; count two was a pendent state claim.

Liberty filed a motion to dismiss and a memorandum arguing, *inter alia,* that there is no private cause of action under § 10 of RESPA. Liberty later filed an affidavit from Roy Litten which stated that he was

an examiner with the Federal Home Loan Bank Board ("Bank Board") and that the Bank Board examines federally insured savings and loan associations for compliance with RESPA. Allison moved to strike the affidavit. The trial court reserved ruling on the motion and granted Liberty's motion to stay discovery.

Allison sent a copy of her complaint to the Bank Board in March, 1981. In September, 1981, the Bank Board determined that Liberty had violated § 10 of RESPA and ordered Liberty to refund excess deposits to its borrowers, including Allison. Liberty moved to supplement its motion to dismiss with copies of correspondence with the Bank Board. Allison objected, requesting the court to strike all factual materials submitted by Liberty, or alternatively, to allow her to conduct discovery and to submit her own materials. The court did not rule on these motions, but instead dismissed the complaint, concluding that Allison had no private cause of action under § 10 of RESPA.

II

Allison raises two issues on appeal. She first contends that the district court erred in holding that there is no private cause of action under § 10 of RESPA. She also asserts that the district court erred in considering evidentiary materials submitted by Liberty in granting Liberty's motion to dismiss. We need not reach the second issue, since we hold that there is no private right of action under § 10 of RESPA without considering any of the evidentiary materials submitted by Liberty.[1]

III

▪ ■ The judiciary's approach to inferring private causes of action in the face of congressional silence has undergone significant changes in recent years. Prior to 1975,

---

** The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. Liberty has refunded to Allison the excess escrow deposit as required by the Bank Board. However, because Allison has not received an accounting and other relief she seeks in excess of the refund, this case is not moot.

courts regularly recognized an implied remedy as long as the plaintiffs were members of a special class for whose benefit the statute was enacted. *E.g., Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). As federal statutes became more comprehensive, this simplistic approach became outmoded. In 1975, the Supreme Court decided the pivotal case of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which set forth a four-part test for determining the propriety of implying a private cause of action. The four factors to be considered are: (1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Id.* at 78, 95 S.Ct. at 2087. The Court has since explained and clarified the test's application. All four factors are not equally weighted; the central inquiry is whether Congress intended to create a private right of action. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979). If Congress has indicated its intent, either expressly or by implication, the court's inquiry ends without consideration of the remaining *Cort* factors. *See id.* at 576, 99 S.Ct. at 2489. The Supreme Court's most recent case addressing the issue reaffirms the centrality of congressional intent. *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377–79, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982).

We begin our inquiry with the language of the statute itself. *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* 444 U.S. at 16, 100 S.Ct. at 245; *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 568, 99 S.Ct. at 2485. Section 10 of RESPA is silent on the subject of remedies, stating simply that a "lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower ... to deposit in any escrow account which may be established in connection with such loan for the purpose of assuring payment of taxes, insurance premiums, or other charges with respect to the property," an amount in excess of that fixed by certain formulas. 12 U.S.C. § 2609. Section 10's silence on the subject of remedies is in sharp contrast to the remedial provisions of §§ 6 (now repealed), 8 and 9, which explicitly create private causes of action.[2] "Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 572, 99 S.Ct. at 2487. We recognize that the private remedies provided in §§ 8 and 9 are extraordinary, utilizing a treble liquidated damage formula that a court could not invoke unless explicitly created by Congress.[3] But the remedy in § 6 was a fairly straightforward private action, extraordinary only in setting $500 minimum damages and allowing recovery of reasonable attorney fees.[4] The fact that Congress explicitly

---

2. The fact that § 6 has been repealed does not prevent us from considering its significance in the statutory framework of RESPA as originally enacted.

3. Under § 8, persons who give or accept kickbacks or unearned fees or who split charges are jointly and severally liable for three times the value given or received. 12 U.S.C. § 2607(d)(2). Under § 9, a seller who requires a buyer to purchase title insurance from a particular title company is liable to the buyer for three times the charges made for the title insurance. 12 U.S.C. § 2608(b).

4. Section 6 provided in relevant part:

If any lender fails to provide a prospective borrower or seller with the disclosure as required by subsection (a), it shall be liable to such borrower or seller, as the case may be, in an amount equal to—

(1) the actual damages involved or $500, whichever is greater, and

(2) in case of any successful action to enforce the foregoing liability, the court costs of the action together with a reasonable attorney's fee as determined by the court ....

12 U.S.C. § 2605(b) (repealed 1976).

provided federal private remedies in three of the four sections immediately preceding § 10 is evidence that Congress intended to deny such remedies by its silence in § 10.

This interpretation is bolstered by an examination of § 16 of RESPA, which provides:

> Any action to recover damages pursuant to the provisions of section 2605 [§ 6], 2607 [§ 8], or 2608 [§ 9] of this title may be brought in the United States district court for the district in which the property involved is located, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

12 U.S.C. § 2614. Here again, congressional attention was focused on private remedies with no mention of private actions under § 10, indicating that Congress did not intend a private action under § 10. *See Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* 444 U.S. at 21, 100 S.Ct. at 247.

Legislative history can be a key to interpreting congressional intent, but "[w]e must recognize that the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." *Cannon v. University of Chicago,* 441 U.S. 677, 694, 99 S.Ct. 1946, 1956, 60 L.Ed.2d 560 (1979). The parties' briefs, the district court's opinion and our own research disclose no legislative history on the issue of private remedies under § 10. While this silence does not automatically require denial of a private right of action, *Northwest Airlines v. Transport Workers Union,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* 444 U.S. at 18, 100 S.Ct. at 246, where analysis of the statute itself weighs against implication of a private cause of action and the legislative history is silent, we must conclude that Congress did not intend to create a private remedy. *See Touche Ross & Co. v. Redington, supra,* 442 U.S. at 571, 99 S.Ct. at 2486.

Allison argues that other *Cort* factors favor implication of a private remedy. However, once we have concluded that Congress did not intend to create a private remedy, our inquiry is at an end. *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* 444 U.S. at 24, 100 S.Ct. at 249; *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 576, 99 S.Ct. at 2489. If our inquiry at this point had been inconclusive, Allison could have invoked the remaining *Cort* factors to demonstrate intent to create a private cause of action under § 10. But as we explain below, consideration of the remaining *Cort* factors would not convince us that Allison should prevail.

Allison contends that she is a member of a class for whose especial benefit RESPA was enacted. But this, standing alone, would not be persuasive, especially if the rights of these especially benefited classes can be effectively vindicated by other means. Allison, however, contends that no other effective mechanism exists for the enforcement of § 10 and therefore a private cause of action under § 10 is necessary to effectuate the underlying purposes of RESPA.

Allison cannot argue that no enforcement mechanism exists for her, since she concedes that the Federal Home Loan Bank Board investigated her claim and ordered Liberty to refund to her over $200 in excess escrow deposits. Rather, she claims that the available nonjudicial enforcement mechanisms are incomplete and inadequate. This, Allison contends, indicates congressional intention to create a private cause of action under § 10.

No enforcement agency is created by RESPA, and no agency is specifically charged with enforcement responsibilities.[5] However, contrary to Allison's assertions, this is not inconsistent with congressional intent to provide only administrative enforcement of § 10. Other provisions of RESPA are to be implemented by several agencies acting in concert, guided by the

---

**5.** The Secretary of Housing and Urban Development is given rule making and interpretive powers, but no specific enforcement powers. 12 U.S.C. § 2617(a).

Secretary of Housing and Urban Development.[6] The task of enforcement, like other responsibilities under RESPA, need not be vested in one agency. Lack of one comprehensive enforcement scheme under one agency should not lead us to conclude that Congress intended private judicial enforcement of § 10.

Allison claims that some lenders covered by RESPA are not overseen by the Bank Board or any other administrative enforcement agency, so borrowers from these lenders have no recourse but private judicial enforcement. RESPA applies only in cases involving a "federally related mortgage loan," as defined in 12 U.S.C. § 2602(1). These loans fall into one of four categories.[7] Lenders making loans in the first three categories are insured by, regulated by, or in some other way connected with a federal agency. Allison does not contend that these agencies cannot enforce RESPA with respect to the lenders that they oversee. She instead focuses on the lenders in the fourth category, who are essentially private lenders making residential real estate loans in excess of $1 million per year. Allison contends that borrowers from lenders in this fourth category are without administrative remedies, and this indicates congressional intention to provide private judicial enforcement for all borrowers.

We cannot say at this point whether Allison is correct in asserting that borrowers obtaining fourth category loans have no administrative avenue of asserting their rights under RESPA. Suffice it to say that even if a small group of borrowers would be unable to invoke RESPA protection absent private judicial enforcement, this is not the affirmative, persuasive evidence we would need to conclude that Congress intended to create a private right of action under § 10 of RESPA for all borrowers, even those who can seek administrative enforcement.[8]

Allison finally contends that the remedy the Bank Board provided was inadequate in that the Board did not, and perhaps could not, compel Liberty to account for its alleged unjust enrichment and assess punitive damages. However, even if we were convinced that the remedy provided was inadequate, "the argument is made in the wrong forum, for we are not at liberty to legislate." *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 579, 99 S.Ct. at 2490.

---

**6.** These agencies include the Federal Deposit Insurance Corporation, the Bank Board, the Administrator of Veterans Affairs, the Attorney General, the Board of Governors of the Federal Reserve System and the Secretary of Agriculture, 12 U.S.C. §§ 2603(a), 2607(c), and 2612(a).

**7.** A federally related mortgage loan must meet certain requirements not at issue here and must be a loan which:

(B)(i) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government; or

(ii) is made in whole or in part, or insured, guaranteed, supplemented, or assisted in any way, by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or

(iii) is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation; or

(iv) is made in whole or in part by any "creditor", as defined in section 1602(f) of Title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year, except that for the purpose of this chapter, the term "creditor" does not include any agency or instrumentality of any state . . . .

12 U.S.C. § 2602(1)(B).

**8.** Liberty suggests that the Federal Trade Commission ("FTC") has administrative authority over fourth category lenders. The FTC does appear to regulate these lenders to some extent, 15 U.S.C. § 1607(c), but we cannot state with certainty that the FTC would enforce RESPA requirements. Even without administrative recourse, however, borrowers from fourth category lenders are not necessarily without *any* remedy. State common law provides a variety of remedies against those who wrongfully acquire and retain property to which they are not entitled.

"The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *California v. Sierra Club,* 451 U.S. 287, 297, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). Our task is to determine congressional intent, not to review the wisdom of congressional actions.

In our decision to decline inferring a private right of action under § 10 of RESPA we have considered the Sixth Circuit's opposite conclusion expressed in a footnote in *Vega v. First Federal Savings and Loan Association,* 622 F.2d 918, 925 n. 8 (6th Cir.1980). That court concluded without analysis or discussion that the legislative history indicated that Congress intended to create a private remedy. Since we have been unable to find anything in the legislative history supporting this conclusion, and in view of that court's cursory treatment of the issue in a short footnote, we do not find the Sixth Circuit's position persuasive. Our analysis of the relevant considerations in determining congressional intent leads us to conclude that no implied private cause of action exists under § 10 of RESPA.

### IV

The district court's decision dismissing Allison's complaint is. AFFIRMED.

POSNER, Circuit Judge, with whom CUDAHY, Circuit Judge, joins, dissenting from the denial of rehearing en banc.

The panel's opinion is not only lucid and well-reasoned; it reaches an attractive result: it excludes from the federal courts a host of petty cases, involving mortgage escrow accounts, which do not belong in those courts under an optimal allocation of jurisdiction between the state and federal courts. Nevertheless, I disagree with the decision, and believe that the case should be reheard en banc. Although 12 U.S.C. § 2609 is pretty small beer, the panel's opinion both sets forth an approach potentially of general application to deciding when federal statutes may be enforced by private damage actions and creates a conflict with another circuit. And the case lends itself to en banc treatment, presenting as it does a single issue, purely of law.

Until quite recently, the test for whether a private damages action would lie for violation of a federal statute, if the statute made no explicit provision for such actions, was that stated in *Texas & Pac. Ry. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916): "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied . . . ." *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), began a movement away from this approach that culminated in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979), which held that "the central inquiry" was "whether Congress intended to create, either expressly or by implication, a private cause of action."

I accept this formulation as absolutely binding upon me; and I accept that under it a court may not create a private right of action unless it has evidence—whether based on the language, structure, background, or history of the statute—that Congress, if it had thought about the issue, would have wanted the statute to be privately enforceable. But this approach implies also that a decision involving one statute is unlikely to decide a case involving a different one. The statute in *Touche Ross,* for example, just required brokers to keep certain records. There was no indication of "a class for whose especial benefit the statute was enacted," so even under *Rigsby* it is doubtful whether a private damages suit should have been allowed. But section 10 of RESPA protects mortgagors from being overcharged ("overescrowed") by their mortgagees. See also the statement of congressional purpose in 12 U.S.C. § 2601(b)(3). *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), does not decide this case either. The statute in *Transamerica* created several express remedies, and the issue was whether Congress would have wanted the courts

to create still another one. RESPA creates no remedy for violations of section 10. *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), cannot carry the day for the panel either; for the Court in that case found an implied private right of action. These are the principal decisions that the panel cites in support of its result.

We can get little help from cases under different statutes. Instead we must ask: if the Congress that enacted RESPA had adverted to the question of remedies for violations of section 10, would it have decided that there ought to be a private damage remedy?

Section 10 forbids the lender to force the borrower to deposit money in escrow above a certain amount. The natural remedy for the violation of such a prohibition is a suit by the borrower to get the excess deposit returned to him. Congress could not have wanted the lender to be able to retain the excess deposit in violation of the statute. True, a private suit is not the only possible remedy. Alternatively, the borrower could complain to an agency with regulatory authority over the lender, and that was done in this case. However, the panel opinion points out that some borrowers may not be able to get any relief by this route, and this should make us hesitant about concluding that Congress would not have wanted borrowers to have a right to sue in court.

More important, the administrative remedy appears to be inadequate even for those borrowers who can invoke it. In the present case, for example, the agency made the defendant return to the plaintiff the money she had overpaid into the escrow account, but (she alleges, and we must assume for purposes of this appeal) not the interest that the defendant had earned on that money. The return of the interest is not some bagatelle, inessential to the adequacy of the administrative remedy. This is not a personal injury case, where interest accrues only from the date of the judgment, and not from the date of the tort itself. It is a suit based on unjust enrichment—a suit for restitution. The defendant took and

kept money to which the plaintiff was entitled by section 10, and any interest that the defendant earned on the money while it was in its possession is recoverable by the plaintiff under the principles of unjust enrichment. See Goff & Jones, The Law of Restitution 479 (2d ed. 1978); cf. Prosser, Handbook of the Law of Torts 627–29 (4th ed. 1971). You may not steal a man's pregnant cow and after it has given birth return the cow and keep the calf. No more should the defendant in this case be allowed to keep the increase in its wealth from investing the plaintiff's money. An order to return just the principal is not an adequate remedy. Yet it may be the only remedy that this plaintiff has under the decision today. Whether she has a remedy under state law for violation of a federal law that the federal courts themselves refuse to enforce is mere speculation. *Otto v. Specialties, Inc.,* 386 F.Supp. 1240, 1244–45 (N.D. Miss.1974), implies she does not.

The fact that sections 7 and 8 of RESPA (and the repealed section 6) create express damage remedies does not show that Congress did not want victims of section 10 violations to be able to get their money back through suits in federal court. Sections 7 and 8 create treble damage remedies for offenses that Congress no doubt thought more serious than violations of section 10, and section 6 provided for minimum damages plus reasonable attorney fees. Federal courts cannot provide these extraordinary remedies—treble damages, minimum damages, and attorney fees—without express statutory authority. But there is nothing extraordinary about the remedy sought by the plaintiff in this case. Cf. *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 289, 61 S.Ct. 229, 233, 85 L.Ed. 189 (1940); *SEC v. Texas Gulf Sulphur Co.,* 446 F.2d 1301, 1307–08 (2d Cir.1971). Nor does section 16 of RESPA, by creating jurisdiction to enforce sections 6 through 8, exclude jurisdiction over suits under section 10. The main provision in section 16 is a one-year statute of limitations. It is a natural quid pro quo for the extraordinary types of relief that sections 6 through 8 give prevailing plaintiffs.

It is of course possible that the banking industry managed to get section 10 enacted without teeth; and if it did the panel decision is correct. But there is no indication that it did, and there is contrary evidence in Senator Proxmire's attack on the bill which became RESPA, a bill he described as "a major defeat for consumers and a stunning victory for the real estate settlement lobby." S.Rep. No. 866, 93d Cong., 2d Sess. 13 (1974), U.S.Code Cong. & Admin.News, pp. 6546, 6557. Senator Proxmire complained that the bill did not go far enough in dealing with abusive practices in real estate settlements. But he did not complain that section 10 lacked teeth. He would have done so if he had thought that the banking industry had succeeded in defanging the section.

RESPA was enacted in 1974 and amended in 1976, and it is worth remembering that this was a period of hectic enactment of regulatory statutes with scant regard for the burden that private enforcement of those statutes might place on the federal courts. I do not suggest that Congress had *Rigsby* at its fingertips, and declined to create an explicit damage remedy for section 10 violations because it thought the courts would do so by implication. But I believe that the nature of the right created, a pecuniary right of borrowers, coupled with the absence of express provision of any alternative remedy to damages for the enforcement of that right, supports an inference that Congress, had it thought about the matter, would have wanted suits for restitution of money withheld in violation of section 10 to be maintainable in federal courts.

It is true that Congress did not in RESPA itself confer jurisdiction on the federal courts to enforce section 10. But there was no need for it to do so. Jurisdiction over such suits is conferred by sections 1331 and 1337 of the Judicial Code. It is true that at the time RESPA was passed, section 1331 was limited to suits for $10,000 or more, and a section 10 case would rarely involve such large stakes. Therefore, if this were the only jurisdictional statute available in this case, one could argue that Congress could not have intended section 10 to be enforced by private damage actions in federal court. But section 1337 did not have in 1974 (and does not have today) an amount in controversy requirement that might apply to a suit under section 10. If Congress should be charged with having known of the $10,000 minimum jurisdictional amount in section 1331, it must also be assumed to have known of the zero minimum in section 1337. There is no doubt that suits to enforce section 10 can be brought under section 1337 as well as under section 1331. RESPA is either a housing or a banking statute; whichever it is, it is an "Act of Congress regulating commerce," so that section 1337 creates jurisdiction over suits arising under it. See *Davis v. Romney,* 490 F.2d 1360, 1365–66 (3d Cir.1974); *Murphy v. Colonial Fed. Savings & Loan Ass'n,* 388 F.2d 609, 615 (2d Cir.1967).

I would reverse the judgment dismissing the complaint.