Michael J. BERGKAMP, Plaintiff,

v.

The NEW YORK GUARDIAN MORT-
GAGEE CORPORATION, et
al., Defendants.

Ralph M. RINEHART, et ux., Plaintiffs,

v.

The NEW YORK GUARDIAN MORT-
GAGEE CORPORATION, et
al., Defendants.

Andrew L. SANGRAY, et ux., Plaintiffs,

v.

The NEW YORK GUARDIAN MORT-
GAGEE CORPORATION, et
al., Defendants.

Steven J. GERMANN, et ux., Plaintiffs,

v.

The NEW YORK GUARDIAN MORT-
GAGEE CORPORATION, et
al., Defendants.

John E. LARSON, et ux., Plaintiffs,

v.

The NEW YORK GUARDIAN MORT-
GAGEE CORPORATION, et
al., Defendants.

Nos. CV 85–210–H–CCL, CV 85–211–H–
CCL, CV 85–212–H–CCL, CV
85–222–H–CCL and CV 85–223–H–CCL.

United States District Court,
D. Montana,
Helena Division.

Aug. 27, 1987.

Robert J. Sewell, Jr., Helena, Mont., for plaintiffs.

Richard E. Gillespie, Helena, Mont., for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

Plaintiffs in each of these cases brought suit in state district court against New York Guardian Mortgagee Corp. (also referred to herein as NYG) and First Montana Title Company.[1] The substance of the allegations is that plaintiffs each executed trust indentures in connection with the purchase of real property; that the Montana Title Co. holds the title in trust; and that New York Guardian has purchased the interest of the financier in each case. Plaintiffs maintain that New York Guardian has breached the implied covenant of good faith and fair dealing, and seek injunctive relief from threatened foreclosure as well as costs and attorney's fees. The gravamen of the complaints is that NYG has required an excessive amount to be deposited in escrow, and that such amount is prohibited by the language of the trust indentures. The bad faith claim is based upon the following alleged actions of NYG: a) erroneous calculation of the amount of the escrow deposit required; b) inaccessibility of NYG and its customer service department; c) improper deposit of funds paid into an "unapplied funds" account; and d) threats of foreclosure if demanded payments were not made.

NYG removed the cases to this Court, and has pending a motion for summary judgment. Plaintiffs seek remand on the ground that this Court has no jurisdiction to entertain the action.

Plaintiffs argue that the only federal issue has been raised by NYG as a defense to their state claims, and therefore that

federal question jurisdiction is unfounded. They insist that this is not a case of "artful pleading" because their claims are based entirely on state law and are not preempted by any federal law. Plaintiffs rely on Montana law limiting the amount of escrow deposits to 110 percent of the yearly requirements for property taxes, insurance premiums, and other expenses. Mont.Code Ann. §§ 71–1–113 to –115 (1985).

NYG's argument in response is twofold. First, it claims that federal law does indeed control this action. Second, it argues that the Montana title companies—the only non-diverse defendants—are nominal parties in each case and that their citizenship need not be considered for purposes of diversity jurisdiction.

NYG claims that this case "arises under" the laws of the United States because resolution of a federal question will play a significant role in the proceedings. NYG relies on the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, et seq., which applies to federally insured mortgages. Section 18 of the Act (12 U.S.C. § 2616) provides that state laws shall apply except to the extent they are inconsistent with the provisions of the Act. Section 10 (12 U.S.C. § 2609) deals with limitations on the requirement of advance deposits in escrow accounts, and allegedly allows an amount in excess of that allowed by Montana law. NYG maintains that in order for plaintiffs to show bad faith, they must prove that NYG was not permitted to disregard the Montana statute, and thus must rely on 12 U.S.C. § 2616. The touchstone of plaintiffs' complaints, NYG asserts, is the proper interpretation of RESPA, and therefore the Court has jurisdiction because the actions arise under federal law.

NYG does not argue that plaintiffs' cause of action is really a federal cause of action and that the complaints were artfully pleaded to avoid federal jurisdiction. Instead it asserts that plaintiffs' right to relief under state law is dependent upon

---

**1.** In one of the cases, Insured Titles, Inc., also a Montana corporation, is named instead of First Montana Title Co. For the purposes of this opinion, these defendants will be referred to jointly as the Montana title companies.

the resolution of a substantial question of federal law. (Defendant's Brief at 10). NYG recognizes, however, that the federal question is paramount only in the tort claim of bad faith, and not in the breach of contract claim.

Alternatively, NYG asserts that the Court has jurisdiction because there is diversity of citizenship between the parties, and that the presence of the Montana title companies does not defeat such diversity. NYG argues that the Montana defendants are only nominal or formal parties, and thus their citizenship may be disregarded. The complaints, claims NYG, only name the title companies because they are trustees and plaintiffs seek only to prevent them from instituting foreclosure proceedings. However, NYG maintains exclusive control over the trust indentures insofar as foreclosure is concerned, and the title companies act only at NYG's direction. Since the title companies have no interest in the controversy between plaintiffs and NYG, their citizenship should not be considered for purposes of diversity jurisdiction. Even if the Court finds that they are not nominal parties, NYG argues that the title companies should be dismissed under Rule 21 because they are not indispensable parties.

In reply, plaintiffs argue that their actions are based entirely on Montana contract and mortgage law and Montana tort law. The contracts between the parties establish the maximum amount for escrow, consistent with Montana law. Plaintiffs claim that when their loans with Montana banks were sold to NYG, suddenly their monthly payments increased and NYG refused to respond to reasonable inquiries. These actions resulted. Plaintiffs assert that their claims arise under state law, and that NYG's arguments under RESPA go only to an asserted defense.

With respect to the issue of diversity jurisdiction, plaintiffs maintain that the complaints seek affirmative relief against both title companies by way of injunction.

Each of the plaintiffs has testified during depositions to his or her fears of foreclosure. Plaintiffs cite Montana statutes giving the trustee of a trust indenture considerable power and responsibility, including the exclusive power to commence foreclosure proceedings. Plaintiffs also claim that the special relationship between the trustee and borrower makes the trustee a necessary party to this action.

1. Federal Question Jurisdiction

■ Removal of a civil case to federal court is proper if the case is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The district courts have original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The issue here is whether plaintiffs' claims, though predicated on violations of state statutes, "arise under" federal law. The burden of establishing federal subject matter jurisdiction falls on the party invoking the removal statute, which is strictly construed against removal. *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir.1987) (citing *Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir. 1984), *cert. denied*, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985), and *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1426 (9th Cir.1984)).

A case "arises under" federal law within the meaning of section 1331 "only if the federal question appears on the face of plaintiff's well-pleaded complaint; if not, original jurisdiction is lacking even if the defense is based on federal law." *Hunter*, 746 F.2d at 639.[2] The "artful pleading" doctrine, which represents a narrow exception to the ordinary rules of federal jurisdiction, allows a court under certain circumstances to recharacterize a plaintiff's state law claim as a federal claim and thus to assume jurisdiction of the action. *Id.* at 640; *Utley v. Varian Associates, Inc.*, 811 F.2d 1279, 1287 (9th Cir.1987).

**2.** The Ninth Circuit repeatedly has questioned the logic of denying removal jurisdiction to a defendant who relies on federal law for its defense, but has recognized that in the absence of Congressional action the courts are powerless to broaden their jurisdiction. *Hunter*, 746 F.2d at 639; *Sullivan*, 813 F.2d at 1372 n. 4.

An "independent corollary" to the well-pleaded complaint rule, known as the "complete preemption" doctrine, allows a finding of federal question jurisdiction where the court concludes "that the pre-emptive force of a statute is so 'extra-ordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar, Inc. v. Williams,* —— U.S. ——, ——, 107 S.Ct. 2425, 2426, 96 L.Ed.2d 318 (1987) (quoting *Metropolitan Life Insurance Co. v. Taylor,* —— U.S. ——, ——, 107 S.Ct. 1542, 1544, 95 L.Ed.2d 55 (1987).

Neither party asserts that the complaints here are artfully pleaded to avoid federal question jurisdiction. Rather, NYG claims that resolution of the state law issues turns on interpretation of RESPA. In essence, NYG argues that RESPA preempts state law to the extent the two are inconsistent. *See* 12 U.S.C. § 2616; Mont.Code Ann. § 32–2–502 (1985).

A similar argument was raised in *Utley v. Varian Associates, Inc.,* where the defendant removed an employment discrimination case on the ground that the issues revolved around its compliance with federal law. 811 F.2d at 1282–83. The plaintiff had commenced the action in state court, asserting violations of California law, although its claims were predicated on the defendant's alleged violation of federal affirmative action duties. The defendant contended that determination of its liability in plaintiff's state law causes of action required resolution of the "substantial" issue of its compliance with the federal affirmative action program, and thus that the state law causes of action arose under federal law.

Applying *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* —— U.S. ——, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the Ninth Circuit held that "if a federal law does not provide a private right of action, then a state law action based on its violation per-

force does not raise a 'substantial' federal question." *Utley,* 811 F.2d at 1283. After concluding that the affirmative action program did not create a private right of action, the court held that there was no "substantial" question of federal law under *Merrell Dow* and that the district court could not assume removal jurisdiction on that basis. *Id.* at 1286.[3]

Assuming that NYG is correct in its position that determination of liability on plaintiffs' tort claims requires a finding that NYG was not entitled to rely on RESPA and thus that interpretation of RESPA is central to the issues in the case, the question is whether RESPA provides a private right of action for the plaintiffs. *Utley,* 811 F.2d at 1283. *See also Hunter,* 746 F.2d at 642–43 (discussing requirement of federal remedy under artful pleading doctrine).

Section 10 of RESPA, 12 U.S.C. § 2609, sets forth the limitations on requirements by lenders of advance deposits in escrow accounts. Section 10 provides the cornerstone of NYG's defense that its requirements are lawful. As the parties have agreed, the central inquiry in the case is the legality of the escrow amounts. In order to find a "substantial" federal question, the Court must find that Section 10 creates a private cause of action under which plaintiffs would have a federal remedy if the suits were brought in federal court.

The Sixth and Seventh Circuit Courts of Appeal have split on the issue whether Section 10 creates a private remedy. In an action by a borrower claiming that the lender required excessive escrow deposits, the Sixth Circuit noted as a preliminary matter that although the Act did not expressly provide for a private right of action under Section 10, "we believe, based on the legislative history, that Congress intended to create a private remedy for violations of the Act." *Vega v. First Federal Savings*

---

**3.** The court compared the *Merrell Dow* test to the artful pleading doctrine, noting that the two modes of analysis are co-existent and that either may support federal question jurisdiction. *Id.*

at 1287. Although the two doctrines are not identical, under either analysis the lack of a private remedy will frustrate jurisdiction. *Id.*

*& Loan Ass'n of Detroit,* 622 F.2d 918, 925 n. 8 (6th Cir.1980).

In a similar action, also commenced by a borrower against a lender, the Seventh Circuit rejected this approach, concluding that no private remedy existed for a violation of Section 10. *Allison v. Liberty Savings,* 695 F.2d 1086 (7th Cir.1982). There is no express language in Section 10 indicating that a private remedy is intended. The court thus began its analysis with the four factors developed by the Supreme Court to be applied in determining whether a private remedy is implicit in a statute not expressly providing one:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (emphasis in original; citations omitted).

Noting the importance of the second and third factors, the court stated, "If Congress has indicated its intent, either expressly or by implication, the court's inquiry ends without consideration of the remaining *Cort* factors." *Allison,* 695 F.2d at 1088.[4] The court observed that Section 10's silence on the subject of remedies "is in sharp contrast to the remedial provisions of §§ 6 (now repealed) [formerly 12 U.S.C. § 2605], 8 [12 U.S.C. § 2607] and 9 [12 U.S.C. § 2608], which explicitly create private causes of action.... The fact that Congress explicitly provided federal private remedies in three of the four sections im-

mediately preceding § 10 is evidence that Congress intended to deny such remedies by its silence in § 10." *Id.* at 1088–89. The court found this interpretation bolstered by the language of Section 16 of RESPA, which provides in part:

> Any action pursuant to the provisions of section 8 or 9 [12 U.S.C. §§ 2607, 2608] may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred....

12 U.S.C. § 2614. This language also conspicuously omits reference to Section 10.

Finally, the court noted that the legislative history with respect to Section 10 is silent as to private remedies. Although that alone would not be conclusive, "where analysis of the statute itself weighs against implication of a private cause of action and the legislative history is silent, we must conclude that Congress did not intend to create a private remedy." *Allison,* 695 F.2d at 1089.

The Court finds persuasive the reasoning of the Seventh Circuit, and concludes that no private remedy was intended under Section 10 of RESPA. Without a private right of action, there can be no "substantial" question of federal law and no basis for removal jurisdiction under the federal question statute. *Utley,* 811 F.2d at 1286.

### 2. Diversity Jurisdiction

Title 28, United States Code, Section 1332, sets forth the requirements for federal subject matter jurisdiction based on diversity of citizenship between the parties to the action. The "citizens" upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navar-*

---

**4.** The Ninth Circuit agrees that Congressional intent is the most important consideration and that the party asserting a private remedy must establish that Congress intended to provide for the private remedy which the court is asked to imply. *In re: Washington Public Power Supply,* 823 F.2d 1349, 1360 (9th Cir.1987).

*ro Savings Ass'n v. Lee*, 446 U.S. 458, 460, 100 S.Ct. 1779, 1781, 64 L.Ed.2d 425 (1980).

The pivotal issue then is whether the trustee of a trust indenture created pursuant to the Small Tract Financing Act of Montana (Mont.Code Ann. §§ 71–1–301 *et seq.*) is a real and substantial party to a controversy over the amount of the payment required by the lender. Under the Small Tract Financing Act, the purchase transaction is set up in the nature of a trust, wherein the grantor is deemed the mortgagor and the beneficiary is deemed the mortgagee. Mont.Code Ann. § 71–1–305 (1985). The trustee holds legal title to the property. Mont.Code Ann. § 71–1–303(5) (1985).

■ It is the general rule that a trustee is an indispensable party to litigation involving the validity of the trust. *Hanson v. Denckla*, 357 U.S. 235, 245, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958). Normally, the trustee represents the interests of the beneficiary so that the trustee alone is the real party in interest, plaintiff or defendant. 3A J. Moore, *Moore's Federal Practice* ¶ 19.08 at 19–175. Moreover, one who holds bare legal title to property is an indispensable party in a suit in which the legal title will be affected. *Id.*, ¶ 19.12 at 19–220. *See also United States v. Annis*, 634 F.2d 1270, 1273 (10th Cir.1980).

■ New York Guardian argues that regardless of the legal relationships between the parties, the dispute is merely between NYG and the plaintiffs over the proper amount of plaintiffs' monthly payments. The complaints, however, request injunctive relief against NYG and the Montana title companies to prevent foreclosure. Under Montana law, the trustee has exclusive power to commence nonjudicial foreclosure proceedings if the obligations of the trust are breached. Mont.Code Ann. § 71–1–304(2) (1985). Without the presence of the trustee, any order by this Court enjoining foreclosure proceedings would not be binding on the party holding the power of sale. Moreover, if the Court denied the request

for injunctive relief and allowed foreclosure proceedings to commence, either the terms of the trust or the legal title to the property, or both, could be affected, thus requiring the presence of the trustee.

The Court therefore concludes that the Montana title companies are indispensable parties to the action whose joinder is needed for just adjudication, and thus that their citizenship must be considered for purposes of determining whether complete diversity exists. Both title companies being citizens of the State of Montana, the state of citizenship of the plaintiffs, diversity of citizenship between the parties does not exist and the action cannot be removed on that basis.[5]

IT IS THEREFORE ORDERED that the plaintiffs' motion for remand is GRANTED, and these matters are REMANDED to the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark.

The clerk shall take all steps necessary to secure prompt transfer of the files, and to forthwith notify counsel of the making and entry of this order.

---

5. Additionally, there is no indication that any of the plaintiffs' claims meets the $10,000 jurisdictional amount, although plaintiffs do seek damages for mental anguish and anxiety as well as punitive damages and attorney's fees.