Lisa M. **CAMPBELL** a/k/a Lisa M. **Staff, Plaintiff,**

v.

**MACHIAS SAVINGS BANK, Defendant.**

Civ. No. 93–0282–B.

United States District Court, D. Maine.

Oct. 7, 1994.

Ralph A. Dyer, Portland, ME, for plaintiff.

Bernard J. Kubetz, Eaton, Peabody, Bradford & Veague, Bangor, ME, Edgar S. Catlin, III, Stephen G. Morrell, Eaton, Peabody, Bradford & Veague, Brunswick, ME, for defendant.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

This dispute arises out of a loan transaction between Plaintiff, Lisa M. Campbell, and Defendant, Machias Savings Bank. Plaintiff asserts that the Bank violated certain provisions of the Real Estate Settlement Practices Act, 12 U.S.C. §§ 2601–17; and both federal and state Truth–in–Lending Acts, 15 U.S.C. §§ 1601–1667e, and 9–A M.R.S.A. §§ 8–101 to 8–404 (Supp.1994). She also raises a number of state common-law claims. The Bank moves for partial summary judgment.[1]

The facts, viewed in the light most favorable to Campbell, the non-moving party, are as follows: In August of 1985, Campbell applied for a loan to finance the purchase of a mobile home. According to Campbell, Caro-

---

1. The Bank's Motion does not address Counts VII or IX. The Bank also withdrew its Motion as to Count VIII on October 5, 1994.

lyn Foster, then a loan officer at the Bank, made a number of representations about the loan for which Campbell was applying. For example, Foster informed Campbell that the loan was provided through the Maine State Housing Authority (MSHA), and that Campbell would therefore have to comply with MSHA requirements. Foster further informed Campbell that a downpayment of five-percent of the purchase price of the mobile home would be required. Campbell told Foster that she did not wish to provide a security interest in her land and was told that no lien on her land would be necessary. Within a few days of her application, the Bank provided Campbell with required disclosure statements: an "Estimated Settlement Statement" and a "Preliminary Truth-in-Lending Disclosure Statement."

Under the MSHA guidelines then in effect, the loan had to be insured. The Bank submitted an application for mortgage insurance to Mortgage Guaranty Insurance Company (MGIC) on Campbell's behalf. MGIC accepted Campbell's application for mortgage insurance on the condition that she purchase the land on which the mobile home was to be located prior to the loan closing. In December 1985, Campbell purchased a house lot in Machias for $2900.[2] Campbell paid cash for the property; there was no financing involved in the transaction.

The closing for Campbell's loan was held on February 25, 1986. At that time, Campbell borrowed $20,594.00 from the Bank toward a mobile home with a purchase price of $21,678.75. She paid $1695.29 toward the contract sales price of the mobile home.

Campbell asserts that the Bank charged her twice for a title search. She also alleges that she paid $266.89, prior to closing, and $205.94, at closing, to the Bank for mortgage insurance; in essence paying twice for the same policy. Finally, she contends that she paid $213.00 to the Bank for hazard insurance which the Bank failed to purchase.

The documents provided to Campbell at closing included a Promissory Note and Security Agreement granting a first mortgage lien on the mobile home and on Campbell's house lot. The Bank also provided a Final Settlement Statement and a final Truth-in-Lending Disclosure Statement. The figures provided in these statements differed from those provided on the earlier disclosure statements provided by the Bank and from the Note and Security Agreement. According to Campbell, these statements also fail to properly reflect the closing expenses that she actually paid.

In addition to these discrepancies, the Maine Bureau of Consumer Credit Protection discovered, around March 1987, that the method used by the Bank to calculate mortgage insurance premiums was inaccurate. This error resulted in an increased finance charge of $38.33 over the thirty-year life of the loan. As a result of the Bureau's discovery, the Bank sent Campbell a Revised Disclosure Statement in June 1987 reflecting this correction.

Campbell had difficulty meeting her obligations under the loan.[3] In January 1993, the Bank threatened foreclosure. Campbell then went to the Bank requesting information about her loan. At the Bank, Campbell met with Lawrence Baker. Baker alleged that, after his meeting with Campbell, he was unable to locate the Bank's file on Campbell's loan. Assuming that Campbell had stolen the Bank's file, Baker filed a complaint of theft with the Machias Police Department. Campbell contends that she never took the loan file from the Bank.

Campbell filed this action in December 1993. The Bank responded with a counterclaim demanding foreclosure and recovery under the loan. The Bank also demanded recovery for amounts due under another loan it extended to Campbell.

2. Prior to the closing, Plaintiff installed a septic system for approximately $7000 and had the mobile home permanently affixed to her lot in accordance with MSHA requirements.

3. According to a Bank employee, Paul Rudd, Campbell's loan was delinquent before the Bank was ready to submit it to the MSHA for approval. Because MSHA will not purchase a delinquent loan, the Bank did not submit the loan for MSHA approval and kept the loan in its own portfolio.

## Count I—RESPA Violations

In Count I, Campbell claims that the Bank committed several violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601–17.

### 1. Overcharges

■ First, Campbell alleges that she was overcharged for attorney fees and mortgage insurance in violation of 12 U.S.C. § 2607 and 24 C.F.R. § 3500.14(c) which prohibit kickbacks and unearned fees. The Bank disputes that Campbell was ever overcharged.

■ Despite the factual dispute between the parties, the Court finds summary judgment is appropriate on this claim because it is time-barred.[4] A private action brought pursuant to § 2607 must be brought "within one year from the date of the occurrence of the violation...." 12 U.S.C. § 2614. The alleged overcharges occurred at the loan closing in February 1986. This action was not filed until December 14, 1993, over seven years later. Campbell's claim under § 2607 is therefore time-barred.[5]

### 2. Excess Insurance Charges and Escrow Accounting

■ Campbell also claims that the Bank's requirement that she prepay a one-year premium for both mortgage and hazard insurance violated 12 U.S.C. § 2609(a)(1) which limits the amount of money that lenders can require borrowers to deposit in escrow. She also asserts that the Bank violated 12 U.S.C. § 2609(c) by failing to provide her with complete and accurate statements of her escrow account on an annual basis.

Although the parties dispute the factual underpinnings of this claim, the Court finds that summary judgment is nevertheless appropriate on this claim because Campbell has no private right of action to proceed under § 2609. The Circuits have split over the standing of a private party to bring an action under § 2609. Compare Vega v. First Fed'l Sav. & Loan Ass'n, 622 F.2d 918, 925 n. 8 (6th Cir.1980) (finding implied private right of action under § 2609), with Allison v. Liberty Sav., 695 F.2d 1086, 1087–91 (7th Cir. 1982) (finding no implied private right of action under § 2609) and Bergkamp v. New York Guardian Mortgagee Corp., 667 F.Supp. 719, 722–23 (D.Mont.1987) (same).

■ The Court agrees with the Seventh Circuit's decision in Allison and finds no implied private right of action under § 2609. The central inquiry in determining whether a private right of action is implied is whether Congress intended to create such a right. Allison, 695 F.2d at 1088 (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979)). The Allison Court was persuaded by the fact that Congress expressly provided private remedies under three other sections of the Act, § 6 (now repealed), § 8 (12 U.S.C. § 2607), and § 9 (12 U.S.C. § 2608); but chose not do so in § 10 of the Act (12 U.S.C. § 2609). Allison, 695 F.2d at 1088. The Court also noted that § 2614, entitled "Jurisdiction of courts; limitations,"

4. Although this issue was not raised by the Bank in its Memorandum, it was raised in the Bank's answer. Furthermore, this question may be considered by the Court sua sponte; at least one court has held that the statute of limitations period under RESPA is jurisdictional. Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039 (D.C.Cir.1986).

5. Even if Campbell's § 2607 claim were not time-barred, she would be unable to recover under RESPA for these overcharges. Section 2607 prohibits kickbacks and referral fee arrangements. Durr v. Intercounty Title Co., 14 F.3d 1183, 1186–87 (7th Cir.1994) (citing Mercado v. Calumet Fed'l Sav. & Loan Ass'n, 763 F.2d 269, 270–71 (7th Cir.1985)). In order to properly state a claim under § 2607, a plaintiff must allege that "[the] overcharge [is] in the nature of a

portion, split, or percentage of any charge given to a third party." Durr, 14 F.3d at 1187 (emphasis added) (internal quotations omitted). It is not enough to claim that the Bank simply kept the overcharge as a windfall for itself. Id.; see also Duggan v. Independent Mortgage Corp., 670 F.Supp. 652, 653 (E.D.Va.1987) (not enough for plaintiff to assert that mortgage company simply "received money for something it failed to do ... [with] no third party present."). Not every "garden variety breach of contract dispute" is a violation of RESPA. Duggan, 670 F.Supp. at 653. In this case, Campbell made no suggestion that the Bank shared the alleged overcharges with any third party. Instead, she simply claimed that she was overcharged. Therefore, even if this claim were not time-barred, Campbell has failed to state a claim under § 2607.

mentions only actions brought under §§ 2607 and 2608. *Id.* at 1089 and 12 U.S.C. § 2614. The *Allison* Court found the legislative history to be silent on this question. *Allison*, 695 F.2d at 1089. Finding no Congressional intent to create a private right of action, the *Allison* Court appropriately concluded that no such right existed.[6] *Id.*

The Sixth Circuit in *Vega* also relied on legislative intent to reach its decision. That Court, however, answered the question briefly in a footnote, "[w]hile the Act does not expressly provide for such a causes [sic] of action, we believe, based on the legislative history, that Congress intended to create a private remedy for violations of the Act." *Vega*, 922 F.2d at 925 n. 8. The *Vega* Court, however, cited no legislative history supporting this conclusion. *Id.* This Court agrees with the *Allison* Court that there is no private right of action implied in § 2609.

Campbell argues that no private right of action under § 2609 is necessary because the overcharges also violate § 2607. If, however, Campbell brought these claims under § 2607, they would be time-barred as previously discussed.

### 3. *Good Faith Estimates*

■ Finally, Campbell contends that the Bank's estimates were not made in good faith and thereby violated 12 U.S.C. §§ 2603–04 and 24 C.F.R. § 3500.7. These provisions require lenders to provide borrowers with a good faith estimate of the expenses likely to be incurred in connection with the closing. 12 U.S.C. § 2604(c). As in § 2609, however, Congress did not provide an express private right of action in § 2604. Again, a search of the legislative history for intent to provide an implied private right of action was unavailing. Therefore, Campbell is without a private right of action to pursue her claim under this provision as well.

The Court grants the Bank's Motion for Summary Judgment on Count I.

### Count II and Count III—Truth-in-Lending

Campbell raises several claims in Count II under the federal Truth-in-Lending Act, 15 U.S.C. §§ 1601–1667e and, in Count III, under the Maine Consumer Credit Code—Truth-in-Lending Act, 9–A M.R.S.A. §§ 8–101 to 8–404 (Supp.1994) (referred to collectively as "TILA").

### 1. *Are Campbell's TILA Claims Time–Barred?*

■ Actions brought under TILA generally must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also* 9–A M.R.S.A. § 8–208(5) (Supp.1994). The Bank contends that Campbell's claims are time-barred because, although the disclosures were made in February 1986, Campbell did not file this action until December 1993.

Campbell responds that her TILA claims are not time-barred because they fall under a statutory exception to the general one-year limitations on TILA claims. That exception provides that:

> [Section 1640(e) ] does not bar a person from asserting a violation of [TILA] in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of *defense* by recoupment or set-off in such action.

15 U.S.C. § 1640(e) and 9–A M.R.S.A. § 8–208(5) (Supp.1994) (emphasis added). Campbell contends that her TILA claims fit into the exception because the Bank has raised a counterclaim to collect the debt owing under the loan and, in her Reply to this counterclaim, Campbell raises the Bank's alleged TILA violations as an affirmative defense.

Congress added the exception to the general one-year statute of limitations period in 1980. Pub.L. No. 96–221, Title VI, § 615, 94 Stat. 180 (1980) (effective October 1, 1982) (codified at 15 U.S.C. § 1640(e)). This exception was an apparent response to a series of cases in which courts barred borrowers

---

**6.** Although the panel deciding the *Allison* decision was unanimous, Judge Posner was joined by Judge Cudahy in filing a well-written and thoughtful dissent from the denial of rehearing en banc. *See Allison*, 695 F.2d at 1091. Although impressed, the Court was not persuaded by this dissenting opinion.

from raising TILA claims in their defense in actions brought by lenders more than one year after the alleged TILA violations. *See, e.g., Basham v. Finance America Corp.*, 583 F.2d 918, 927 (7th Cir.1978), *cert. denied sub nom. DeJaynes v. General Finance Corp.*, 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979).

The language of § 1640(e) makes it clear that if no counterclaim had been filed by the Bank, Campbell's affirmative TILA claims would be subject to the one-year statute of limitations and would be time-barred. *See, e.g., Moor v. Travelers Ins. Co.*, 784 F.2d 632, 634 (5th Cir.1986) (holding borrower/plaintiff could not benefit from § 1640(e) exception). Likewise, it is also clear that if the Bank had, as a plaintiff, brought an action to collect the debt, and Campbell's TILA claims had been raised in a counterclaim, they would be timely under the § 1640(e) exception. *See, e.g., First State Bank v. Phillips*, 13 Ark.App. 157, 681 S.W.2d 408, 410 (1984). This case, however, presents an anomalous situation in which Campbell brings her TILA claims both affirmatively and defensively.

The Court has been unable to find any caselaw directly addressing this question. The legislative history is also not instructive. It would seem, on the one hand that "[w]hen the debtor hales the creditor into court, as [Campbell] has done in this case, the claim by the debtor is affirmative rather than defensive." *Moor*, 784 F.2d at 634. On the other hand, the statutory language states that the exception applies when TILA claims are raised "as a matter of defense by recoupment or set-off" and is not expressly limited to counterclaims. 15 U.S.C. § 1640(e).

The Court concludes that Campbell's affirmative TILA claims are time-barred and therefore summary judgment is appropriate as to Counts II and III. To the extent that these claims are raised, however, as a defense to the Bank's counterclaim, they are not barred. Campbell's TILA claims remain in this action, therefore, only as a defense to the Bank's counterclaims.

The Court notes that federal question jurisdiction can no longer be based on Campbell's federal TILA claim. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908) (federal question jurisdiction may not be based on an anticipated defense). The only remaining affirmative claims raised by Campbell are state law claims. The Court must decide, therefore, whether it can properly exercise pendent jurisdiction over these remaining claims. "[A]lthough the Supreme Court in [*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)] indicated that pendent state claims should be dismissed if all federal claims are dismissed prior to trial, ... other considerations ... nevertheless may warrant the exercise of pendent jurisdiction." *Scott v. Central Me. Power*, 709 F.Supp. 1176, 1194 (D.Me.1989). The Court finds that the circumstances of this case support such an exercise of jurisdiction. This case is scheduled for trial in less than two weeks, discovery has been completed, and the parties have consumed more than a year in pretrial proceedings. In addition, if the parties are required to bring this action in state court, not only would they be required to begin all over again, they would also likely face a significant delay.[7] Finally, unlike the state-law claims raised in *Financial Gen. Bankshares, Inc. v. Metzger*, 680 F.2d 768, 772–78 (1st Cir.1982), in which the First Circuit held that the exercise of pendent jurisdiction was an abuse of discretion; the state-law issues in this case are not novel or uncertain. *See id.* at 775–78. In the interest of convenience to the parties and judicial economy, therefore, the Court will exercise pendent jurisdiction over the remaining state law claims.

### Count IV—Unfair Trade Practices

Maine's Unfair Trade Practices Act, 5 M.R.S.A. §§ 205–A to 214 (1909 & Supp. 1994), declares "unfair or deceptive acts or practices in the conduct of any trade ... unlawful." 5 M.R.S.A. § 207 (1989). Campbell contends that her loan from the Bank was provided as a service under 5 M.R.S.A.

7. During Fiscal Year 1994, the average time between filing and disposition in the state Superior Court (Washington County) is 366 days. The analogous time period in this District is 204 days and we are on the eve of trial.

§ 206(3), and that the Bank's conduct in relation to this loan constitute deceptive acts and practices in violation of 5 M.R.S.A. § 207.

█ The Bank's only challenge to this claim, for the purposes of this Motion, is that it is time-barred. The Bank correctly asserts that claims under Maine's Unfair Trade Practices Act are subject to Maine's general six-year statute of limitations period for civil actions. *State v. Bob Chambers Ford, Inc.,* 522 A.2d 362, 364 (Me.1987).

### 1. When did the cause of action accrue?

"In general, the accrual of a cause of action occurs at the time a judicially cognizable injury is sustained." *Dugan v. Martel,* 588 A.2d 744, 746 (Me.1991) (citing *Chiapetta v. Clark Assocs.,* 521 A.2d 697, 699 (Me.1987)). Campbell claims that the Bank took a mortgage on her land, despite its alleged assurances to the contrary; charged her twice for some services; and failed to properly account for her loan. She contends that the injury resulting from the Bank's misconduct did not occur until 1993 when the Bank claimed default and demanded payment because she did not discover the violations until that time.

In Maine, however, the general rule is that "mere ignorance of a cause of action does not prevent the statute of limitations from running." *Dugan,* 588 A.2d at 746. Moreover, in this case, Campbell had notice in 1986 that she overpaid for certain services, that the Bank took a mortgage on her land, and that discrepancies existed in the Bank's disclosure statements.

█ Campbell may not have had any actual knowledge of her claims that the Bank failed to properly procure insurance coverage. There is nothing to indicate, however, that the Bank made any attempt to conceal this from her. Moreover, "[t]here [is] nothing inherently unknowable about the lack of coverage since it [is] an aspect of the contract of insurance." *Kasu Corp. v. Blake, Hall & Sprague, Inc.,* 582 A.2d 978, 980 (Me.1990) (holding cause of action for breach of contract arose when agent failed to procure insurance and not when party discovered that lack of coverage). Contrary to Campbell's assertions, therefore, the Court

finds that Campbell sustained a judicially cognizable injury in 1986.

█ Campbell argues that even if her cause of action accrued in 1986, the statute of limitations should be equitably tolled. The Maine Supreme Court has stated:

> The gist of an estoppel barring the defendant from invoking the defense of the statute of limitations is that the defendant has conducted himself in a manner which actually induces the plaintiff not to take timely legal action on a claim.

*Hanusek v. Southern Maine Med. Ctr.,* 584 A.2d 634, 636 (Me.1990) (quoting *Townsend v. Appel,* 446 A.2d 1132, 1134 (Me.1982)). The doctrine of equitable tolling does not apply to the facts of this case. Campbell had notice of most of her claims at closing and the Bank did not prevent her from discovering whether she had mortgage insurance coverage. The Bank is therefore not estopped from raising the statute of limitations in its defense. The Bank's Motion for Summary Judgment as to Count IV is therefore granted.

### Count V—Breach of Contract

Campbell claims that the Bank "breached its contractual obligations to Plaintiff, including, without limitation, those obligations created by the Note and Security Agreement and its oral agreement to make a residential mortgage loan as described on the Loan Application." (Am.Compl. ¶ 96.)

### 1. The Oral Agreement

█ Campbell alleges that when she applied for a loan, the Bank's loan officer lead her to believe that she was applying for a loan through the MSHA, which required a five-percent downpayment and security on the mobile home but no security on her land. She claims that, by accepting her loan application, the Bank offered her a loan in compliance with those representations. She further contends that, when she accepted this offer, the parties entered into an oral agreement. She argues that the Bank breached this oral agreement by failing to submit her loan to the MSHA, and by requiring a downpayment in excess of five percent as well as a security interest in her house lot.

Under the parol evidence rule, however, "a binding partially integrated agreement discharges prior agreements to the extent that it is inconsistent with them." *Loe v. Town of Thomaston*, 600 A.2d 1090, 1092 (Me.1991). Campbell claims that the oral promises allegedly made by the Bank, at least regarding security and downpayment requirements, are inconsistent with the terms of the written Note and Security Agreement signed by both parties. Based on the parole evidence rule, therefore, these oral promises are discharged. *See id.*

■ To the extent that the written loan agreement is silent as to the loan's MSHA status, it may be considered only partially integrated. Even assuming, however, that the Bank could be bound to its oral promise to provide Campbell a MSHA loan, the Court finds that the bank did not breach such a promise. As was noted earlier, Campbell's loan was delinquent before the Bank was ready to submit it to the MSHA for approval. The Bank did not submit the loan for MSHA approval and instead kept the loan in its own portfolio because the MSHA will not purchase a delinquent loan. Campbell offered no evidence to contradict these assertions. Therefore, the Bank was prevented by Campbell's own actions from receiving MSHA approval. It is well-settled contract law that a party must perform under a contract, "unless his performance is rendered impossible by the act of . . . the other party." *United States v. Gleason*, 175 U.S. 588, 602, 20 S.Ct. 228, 233, 44 L.Ed. 284 (1899).[8]

*2. The Note and Security Agreement*

■ Campbell also claims that the Bank breached its written Note and Security Agreement. Specifically, she argues that the Bank breached its contract by failing to meet "its statutory and common law duty to account for money paid with respect to the loan," and by rebuking her efforts to investigate the handling of her loan. (Pl.'s Response to Mot. for Summ. J. at 22.) The Note and Security Agreement contains no terms, however, regarding accounting or investigations into disputes arising from the loan. Campbell does not argue that these terms were implied. Accordingly, Campbell has failed to allege facts supporting her claim for breach of contract.

The Bank's Motion for Summary Judgment as to Count V is therefore granted.

### Count VI—Emotional Distress

■ In Count VI of her Complaint, Campbell claims negligent and intentional infliction of emotional distress. In addition to the factual allegations discussed above, Campbell alleges that "[o]n one occasion, a Bank officer refused to provide information, berated [her] and called [her] 'stupid' in a loud voice in the middle of the Bank office when a large number of people were present and could hear him." (Campbell Aff. ¶ 47.) She further alleges that the Bank attempted to disrupt her relationship with her attorney and to intimidate her into halting her investigation by taking extreme actions, including filing false criminal charges against her for stealing the Bank's file on her loan.[9] She also contends that the Bank regularly and continually threatened to foreclose on her loan.

She asserts that "her problems with the Bank" caused her to become depressed and

---

8. The Court also notes that an oral promise to enter into a thirty-year loan agreement would very likely present problems under Maine's Statute of Frauds which provides that "[n]o action shall be maintained [on] any . . . [a]greement not to be performed within one year from the making thereof . . . unless the promise, contract or agreement on which such action is brought . . . is in writing and signed by the party to be charged therewith. . . ." 33 M.R.S.A. § 51 (1988).

9. The Bank argues that it was reasonable for its employee, Lawrence Baker, to accuse Campbell of stealing the file. According to Baker, he left Campbell in his office with the loan file for about five minutes. When he returned, he found Campbell looking through the file. Baker claimed that after Campbell left the Bank, he was unable to locate the file. When he later asked Campbell about the file, she denied taking it.

Campbell continues to deny taking the file. She also contends that the Bank's belief that she took the file was unreasonable. She points to the Bank's admissions: (1) that no one saw her take the file; (2) that the Bank's security videotape "did not prove whether the plaintiff did or did not have her mortgage file visible on her person when she left the bank;" and (3) that the Bank re-used the security video of that date.

aggravated her multiple sclerosis. She further alleges that these problems caused the end of her year-long marriage.

The Bank first argues that Campbell's claims for emotional distress are time-barred. Maine's general civil six-year statute of limitations period applies to actions for emotional distress. *Henriksen v. Cameron,* 622 A.2d 1135, 1142–43 (Me.1993). At least some of the conduct of which Campbell complains, however, occurred within the six years prior to the filing of this action. For example, the Bank filed its criminal complaint on January 25, 1993, only months before Campbell filed this action.

### 1. *Intentional Infliction of Emotional Distress*

To succeed on a claim for intentional infliction of emotional distress under Maine law, a plaintiff must show that:

(1) the defendant acted intentionally, recklessly or was substantially certain that severe emotional distress would result from its conduct; (2) that the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) plaintiff's emotional distress was so severe that no person reasonably could be expected to endure it.

*FDIC v. S. Prawer & Co.,* 829 F.Supp. 439, 449 (D.Me.1993) (quoting *Gray v. State,* 624 A.2d 479, 484 (Me.1993) (brackets omitted)).

Campbell has introduced no evidence that the Bank's conduct "was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community." *Prawer,* 829 F.Supp. at 449. For example, it is undisputed that Campbell was in default on her loan for delinquent or late payments. Under the circumstances, threats of foreclosure were understandable. Further, the filing of a criminal complaint against Campbell for theft might be considered negligent, but not "utterly intolerable in a civilized community,"

*id.,* particularly where the Bank has provided at least some evidence that its suspicions were reasonable. While the Court does not condone the Bank's treatment of Campbell during her attempts to investigate her loan, the one incident of rude behavior in this case is not enough to establish a claim of intentional infliction of emotional distress. Finally, none of the other acts alleged by Campbell could reasonably be considered "outrageous" or "atrocious."

### 2. *Negligent Infliction of Emotional Distress*

"[A] claim of negligent infliction of emotional distress requires a plaintiff to prove that the defendant acted negligently, that psychic injury was foreseeable given the nature of the defendant's conduct, and that the plaintiff suffered severe emotional distress as a result of the defendant's negligence." *Prawer,* 829 F.Supp. at 451 (citing *Gammon v. Osteopathic Hosp. of Maine, Inc.,* 534 A.2d 1282, 1285 (Me.1987)).

The Bank argues that Campbell's claim of negligent infliction of emotional distress must fail unless the Bank is found liable for an underlying tort. The Maine Supreme Court rejected this position in *Gammon v. Osteopathic Hospital of Maine, Inc.,* 534 A.2d at 1283. *See id.,* (rejecting requirements of showing either an underlying tort or physical impact for recovery on a negligent infliction of emotional distress claim as "more or less arbitrary").

Although no reasonable jury could conclude that the Bank acted in an atrocious manner "utterly intolerable in a civilized community," *see Prawer,* 829 F.Supp. at 449; the Court is satisfied that Campbell has created a genuine issue of material fact as to whether the Bank's alleged negligence foreseeably caused Campbell to suffer severe emotional distress. The Bank's Motion for Summary Judgment is therefore granted as to Campbell's claim of intentional infliction of emotional distress and denied as to Campbell's claim of negligent infliction of emotional distress.

### Count X—Breach of Fiduciary Duty

In Count X, Campbell alleges that she "relied upon the Bank's superior position and skills and placed her trust and confidence in the Bank to act in a fair and reasonable manner for her best interests." (Am. Compl. ¶ 117.) The Bank asserts that it had no fiduciary duty to Campbell.

Under Maine law, the essential elements of a confidential relation are "the actual placing of trust or confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation." *Diversified Foods, Inc. v. First Nat'l Bank,* 605 A.2d 609, 614 (Me. 1992) (quoting *Ruebsamen v. Maddocks,* 340 A.2d 31, 35 (Me.1975)). A plaintiff bears a heavy burden in establishing such a relation. *Diversified Foods,* 605 A.2d at 615. A creditor-debtor relationship, by itself, does not create a fiduciary duty. *First NH Banks Granite State v. Scarborough,* 615 A.2d 248, 250 (Me.1992). Such a relationship may be created, however, by circumstances such as a "diminished emotional or physical capacity or of the letting down of all guards and bars that defines disparity of position in the context of a confidential relation." *Diversified Foods,* 605 A.2d at 615 (quoting *Reid v. Key Bank,* 821 F.2d 9, 18 (1st Cir.1987) (internal quotations omitted)).

Campbell has alleged that she placed her confidence and trust in the bank. She also alleges that she has been totally disabled as a result of multiple sclerosis throughout these transactions. She further alleges that she has limited education and no business or financial experience.

On the other hand, she does not allege "a long-term relationship of trust with the Bank" nor does she allege that the scope of their relationship extends beyond the loans at issue in this case. *See First NH Banks,* 615 A.2d at 250 (finding no confidential relationship between creditor and debtor where no long-term relationship and relationship limited to those loans in question).

10. As discussed above, Campbell's affirmative claims under TILA in Counts II and III are time-barred. Her use of these claims as a defense

The Court finds that Campbell has raised a genuine issue of material fact regarding whether a confidential relationship existed. The Bank's Motion for Summary Judgment, is therefore, denied.

### Conclusion

The Court *GRANTS* the Bank's Motion for Summary Judgment as to Counts I, II, III,[10] IV, and V and *DENIES* the Motion as to Count X. As to Count VI, the Motion is *GRANTED IN PART AND DENIED IN PART.*

*SO ORDERED.*

against the Bank's counterclaim, however, is not barred.