# IN THE SUPREME COURT OF IOWA

No. 23 / 04-1139

Filed April 14, 2006

**MARK STURM** and **LORI J. STURM**,

Appellants,

vs.

**PEOPLES TRUST & SAVINGS BANK**,

Appellee.

---

Appeal from the Iowa District Court for Carroll County, Joel E. Swanson, Judge.

Bank customers appeal from summary judgment against them in their suit against bank based on alleged violations of federal statute and common law. **AFFIRMED.**

Benjamin T. Doran of Doran Anderson & Baltimore, P.L.C., Boone, for appellants.

Bernard L. Spaeth, Jr. of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

**LARSON, Justice.**

The plaintiffs, Mark and Lori J. Sturm, defaulted on loans they had obtained from Peoples Trust & Savings Bank (Peoples), and Peoples foreclosed. After the foreclosure, Sturms filed this suit, claiming the loan papers had failed to comply with a federal statute, that Peoples negligently misrepresented the rights and duties under the loan agreements, and that they had suffered damages as a result. The district court sustained Peoples' motion for summary judgment, and Sturms appealed. We affirm.

### I. *Facts and Prior Proceedings.*

Sturms and Peoples had a long banking relationship, but only two transactions are involved on this appeal. The first was a loan in July 1999 for $100,000 to build a cabin on Sturms' acreage. Peoples, in order to loan the money, required a first lien on the Sturms' real estate, which was at that time mortgaged to Farmers Savings Bank of Halbur (Farmers). Peoples paid the balance due to Farmers of $54,237.28 to obtain a first-lien position. In addition, $12,118.35 was deducted from the loan proceeds to pay off a previous loan Sturms had with Peoples. As a result of the payments to Farmers and to Peoples on its existing loan, Sturms did not get the full $100,000 for the construction of their cabin, as they had planned.

The second transaction relates to what was actually a new loan taken out by the Sturms in 2001 in the amount of $143,292.71. The loan required an initial payment of $4500 and monthly payments of $1359.39. The Sturms claim that they were not aware that a new loan was being created and that they believed three of the previous loans with Peoples were merely being renewed.

The gist of the Sturms' suit against Peoples is that the loan papers were deficient under federal statutes and common law. They argue that the first of the bank's "HUD-1" forms (which we explain later) was deficient

because it failed to state on its face that the net amount of the loan would be reduced by the payment to Farmers and to Peoples on its earlier loan. They believe the second HUD-1 form was deficient because it indicated that the three previous loans were merely being renewed.

The factual support for Sturms' claims are not at issue on appeal. The sole issues are legal ones: (1) Do borrowers have a private cause of action against a lending institution for violation of the federal lending statute involved here, and (2) if statutory liability does not exist, may Peoples be held liable under a theory of negligent misrepresentation?

## II. *The Statutory Claim.*

The Sturms claim that Peoples failed to comply with 12 U.S.C. § 2603, which provides for the development and use of a standard form called "HUD-1." The statute requires that the form

> conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement and shall indicate whether any title insurance premium included in such charges covers or insures the lender's interest in the property, the borrower's interest, or both.

This section is part of the "Real Estate Settlement Procedures Act" or RESPA. The bank does not concede that it violated § 2603, but argues that, even if it had violated it, the Sturms have no cause of action.

The Sturms acknowledge that § 2603 does not expressly create a private cause of action for a violation. However, they argue that it is "inconsistent to impose requirements on a lender, yet protect it [from] liability to a borrower for violations of those requirements." While they acknowledge that the weight of authority suggests that a private cause of action cannot be implied from 12 U.S.C. § 2603, they believe this court should reach a different result.

Only one case cited by Sturms found an implied cause of action under RESPA. That case is *Vega v. First Federal Savings & Loan Association*, 622 F.2d 918 (6th Cir. 1980). However, the "holding" in that case is relegated to a footnote:

> As a threshold matter, we must determine whether [RESPA] creates a private cause of action for violations of 12 U.S.C s 2609 and 12 U.S.C. s 2610. While the Act does not expressly provide for such causes of action, we believe, based on the legislative history, that Congress intended to create a private remedy for violations of the Act.[1]

*Vega*, 622 F.2d at 925 n.8. Apparently, all other reported federal cases have found no implied cause of action. *See Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997) (finding no private cause of action under 12 U.S.C. § 2604 (requiring that information booklets and good-faith estimate of charges for specific settlement services be provided)); *Louisiana v. Litton Mortgage Co.*, 50 F.3d 1298, 1301-02 (5th Cir. 1995) (finding no private right of action under 12 U.S.C. § 2609) (limitation on advance deposit requirements); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1089 (7th Cir. 1982) (finding no private right of action under 12 U.S.C. § 2609); *Bloom v. Martin*, 865 F. Supp. 1377, 1385 (N.D. Cal. 1994) (finding no private cause of action under 12 U.S.C. § 2603), *aff'd on other grounds*, 77 F.3d 318, 320-21 (9th Cir. 1996); *Campbell v. Machias Sav. Bank*, 865 F. Supp. 26, 31 (D. Me. 1994) (finding no implied cause of action under 12 U.S.C. § 2609); *Bergkamp v. N.Y. Guardian Mortgagee Corp.*, 667 F. Supp. 719, 723 (D. Mont. 1987) (finding no private cause of action under 12 U.S.C. § 2609).

Apparently, the only eighth circuit decision discussing the issue is *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995). *DeBoer*

---

[1]The court in *Vega* did not elaborate on the "legislative history" it found to support a private cause of action. In fact, as the court observed in *Allison v. Liberty Savings*, 695 F.2d 1086, 1089 (7th Cir. 1982), "[t]he parties' briefs, the district court's opinion and our own research disclose no legislative history on the issue of private remedies under § 10."

recognized the split in authorities, but it expressed doubt as to whether an implied cause of action exists under RESPA. In assessing the merits of a class-action settlement in that case, the court said:

> Counseling strongly in favor of the settlement is the fact that the plaintiffs did not have a very strong case—they may not have even had a legitimate federal cause of action.

*DeBoer*, 64 F.3d at 1177. Based on the state of the law in other jurisdictions, the court concluded "there was a strong unlikelihood of success" by the plaintiffs. *Id.*

In determining whether a private cause of action was created by implication, many courts have relied on the four-part test of *Cort v. Ash*, 422 U.S. 66, 78, 95 S. Ct. 2080, 2088, 45 L. Ed. 2d 26, 36-37 (1975). Under that case, a court should inquire whether (1) the statute was created for the plaintiff's special benefit, (2) there is any indication of legislative intent to create a private remedy, (3) a private remedy would be consistent with the legislative purpose, and (4) the area is so traditionally relegated to the states that it would be inappropriate to infer a cause of action based solely upon federal law.

In further refining the test, the Supreme Court has held that, because the ultimate question is one of legislative intent, the determinative factor is whether there is any indication of congressional intent to create a private remedy. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16, 100 S. Ct. 242, 245, 62 L. Ed. 2d 146, 152 (1979). Further, the Court stated in *Alexander v. Sandoval*, 532 U.S. 275, 286-87, 121 S. Ct. 1511, 1519-20, 149 L. Ed. 2d 517, 528 (2001),

> [l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action

does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

(Citations omitted.)

The legislative history of this statute does not support an interpretation under which a private remedy is created. *See* S. Rep. No. 93-866 (1974), H.R. Rep. No. 93-1526 (1974), H.R. Rep. No. 94-667 (1975), H.R. Rep. No. 94-769 (1975). Rather, its limited purpose is as stated by Congress:

> that consumers throughout the Nation [be] provided with greater and more timely information on the nature and the costs of the settlement process and [be] protected from unnecessarily high settlement charges caused by certain abusive practices . . . .

12 U.S.C. § 2601(a).

According to the Supreme Court,

> the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.

*Cannon v. Univ. of Chicago*, 441 U.S. 677, 688, 99 S. Ct. 1946, 1953, 60 L. Ed. 2d 560, 570 (1979).

In Sturms' case, it is not likely that Congress merely overlooked providing a private remedy under § 2603 because other provisions in RESPA specifically state that a private remedy exists. For example, § 2605 provides for liability of a lender for violations of the loan and escrow servicing provisions and § 2607 provides for penalties and private remedies for violation of a kickback in unearned fee provisions.

We reject Sturms' claim that § 2603 provides a private cause of action for its violation.

### III. *The Negligent Misrepresentation Claim.*

The Sturms pled a common-law claim for negligent misrepresentation that, they contend, provided a basis for recovery independent of their statutory claim under 12 U.S.C. § 2603. The district court dismissed that claim as well as the statutory claim.

We recognize claims for negligent misrepresentation as defined in Restatement (Second) of Torts section 552. *See Freeman v. Ernst & Young*, 516 N.W.2d 835, 837 (Iowa 1994). Section 552 provides:

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Sturms, however, have a major obstacle to overcome in applying the tort of negligent misrepresentation in this case because

> the tort does not apply when a defendant directly provides information to a plaintiff in the course of a transaction between the two parties, which information harms the plaintiff in the transaction with the defendant.

*Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 126 (Iowa 2001). Thus, the tort "predominately applies to situations where the information supplied harmed the plaintiff in its relations with third parties." *Id.* at 126.

In *Haupt v. Miller,* 514 N.W.2d 905, 910 (Iowa 1994), we refused to recognize a negligent misrepresentation claim against a bank officer in connection with the negotiation of a loan guarantee. We noted the distinction between defendants in the business of supplying information, as to which the tort principle may apply, and parties to an arms-length or adversary transaction, as to which the claim does not apply. Here, the loan

transactions fall within the latter category, and the negligent misrepresentation principles of section 552 do not apply.

**AFFIRMED.**